# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2521

_____

In re: Master Services, Inc.        *
        *
        Debtor,        *
        *
        *
_____        *
        *
Master Services, Inc.,        *
        *
        Appellee,        *   Appeal from the United States
        *   District Court for the
        v.        *   Western District of Missouri.
        *
Empire Bank,        *   [UNPUBLISHED]
        *
        Defendant-Appellee,        *
        *
Heidelberg Print Finance Americas,        *
Inc.,        *
        *
        Appellant.        *

_____

Submitted: October 28, 2005
Filed:  March 28, 2006

_____

Before MURPHY, COLLOTON, and BENTON, Circuit Judges.

_____

PER CURIAM.

Heidelberg Print Finance Americas, Inc. (Heidelberg), appeals from an order of the district court[1] affirming a decision of the bankruptcy court[2] holding that its purchase money security interest (PMSI) in certain property is inferior to a conflicting security interest held by Empire Bank (Empire). For the reasons stated below, we affirm.

In April 2003, Master Services, Inc. (debtor), filed a voluntary Chapter 11 bankruptcy petition. Because Heidelberg and Empire each asserted a perfected security interest in equipment debtor had purchased from Heidelberg (the equipment), debtor brought an adversary proceeding to determine priority. Heidelberg asserted priority of its lien under Mo. Ann. Stat. § 400.9-324(a) (West 2003) (stating general rule that perfected PMSI in goods other than inventory or livestock has priority over conflicting security interest in same goods if PMSI "is perfected when the debtor receives possession of the collateral or within twenty days thereafter"). At a hearing before the bankruptcy court, the parties introduced documents showing the following.

On August 9, 2001, debtor and Heidelberg entered into a sales contract and security agreement for debtor to purchase the equipment from Heidelberg for $5,000 down, plus $184,848 over 60 months. On November 2, 2001, following Heidelberg's installation of the equipment, Michael Murphy, debtor's president, faxed a letter to Heidelberg expressing satisfaction with the equipment but noting that installation had been slow, the equipment was not fully operational until October 15, and as a matter of equity, monthly payments should not begin until November 19. On November 19, debtor made its first monthly payment to Heidelberg. On November 27, 2001,

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

Heidelberg filed with the Missouri Secretary of State a UCC financing statement perfecting its PMSI in the equipment.

Meanwhile, on September 5, 2001, Empire had executed a $725,000 loan to debtor; on the same day, debtor and Empire executed a commercial security agreement which granted Empire a security interest in "accounts and other rights to payment," "inventory," "equipment," and "general intangibles." On September 7, 2001, Empire filed with the Missouri Secretary of State a UCC financing statement describing as collateral for its loan to debtor "[a]ll equipment and machinery, furniture and fixtures, all inventory, all present and future accounts receivable, general intangibles, proceeds arising therefrom, however evidenced or acquired, purchased with loan proceeds and hereafter acquired and all additions and accessions thereto and insurance proceeds thereof."

The bankruptcy court determined that debtor had received possession of the equipment on or about October 15, 2001, the date the equipment was fully operational according to Murphy. The court concluded that, because Heidelberg filed its UCC financing statement on November 27, 2001 (more than 20 days later), section 400.9-324(a) did not apply. The court also determined that Empire's description of the collateral in its UCC financing statement covered not only property acquired with loan proceeds, but also after-acquired property, including the equipment. The bankruptcy court thus held that Empire had a properly perfected security interest in the equipment, which was prior to Heidelberg's PMSI. Judgment was entered accordingly.

Heidelberg appealed to the district court. Urging application of the so-called "obligation standard" to determine when debtor "received possession" of the equipment for purposes of section 400.9-324(a), Heidelberg argued that debtor received possession of the equipment on November 19, the date of debtor's first monthly payment. Heidelberg also challenged the bankruptcy court's determination

that Empire's description of the collateral in its UCC financing statement covered the equipment. The district court affirmed, and Heidelberg timely appealed to this court, renewing the arguments it made in the district court.

We review the bankruptcy court's factual findings for clear error, and its legal conclusions de novo. See Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987). We agree with the bankruptcy court that, for purposes of applying section 400.9-324(a), debtor received possession of the equipment on or about October 15, 2001, when the equipment was undisputedly fully operational. See Mo. Ann. Stat. § 400.9-324 cmt. 3 (West 2003) (when buyer takes possession of goods in stages, followed by assembly and testing, buyer receives possession within meaning of subsection (a) when, "after an inspection of the portion of the goods in the debtor's possession, it would be apparent to a potential lender to the debtor that the debtor has acquired an interest in the goods taken as a whole"). In the present case, it would have been apparent to a potential lender that debtor had acquired an interest in the equipment taken as a whole on or before October 15, given debtor's own statement that the equipment was fully operational on that date. Moreover, even if we were to apply the "obligation standard" as urged by Heidelberg, debtor was obligated to perform under the contract at least by November 2, the date on which debtor expressly confirmed its satisfaction with the operation of the equipment. Because Heidelberg filed its UCC financing statement more than 20 days later, section 400.9-324(a) does not apply.

We also hold that the bankruptcy court did not err in determining that Empire's description of the collateral in its UCC financing statement covered the equipment as after-acquired property, and thus that Empire has a properly perfected security interest which has priority over Heidelberg's PMSI. Accordingly, we affirm.

_____